**In the Matter of the ESTATE OF John L. BURSHIEM, Deceased.**

**Katrine BURSHIEM, Appellant,**

v.

**Virginia BURSHIEM, Personal Representative of the Estate of John L. Burshiem, Deceased, Appellee.**

**Civ. No. 910097.**

Supreme Court of North Dakota.

March 31, 1992.

Katrine Burshiem, pro se.

John D. Bullis (argued), Lies, Bullis and Grosz, Wahpeton, for appellee.

MESCHKE, Justice.

Katrine Burshiem appeals from a probate order that declared her deceased husband, John L. Burshiem, had been domiciled in North Dakota rather than Florida, and that appointed his sister-in-law as personal representative of the estate. We reverse and remand for further proceedings.

John L. Burshiem worked for over twenty-five years as a security guard and nightclub manager in the Miami region of Florida. In 1982 John returned to Abercrombie, North Dakota, where he had been born and raised, to care for his aging and ailing parents. In 1983, John briefly went back to Miami to aid the owners of a large, luxury-apartment complex that John had once served as director of security. There, John met Katrine Heitger Sapiro, a well-to-do widow, who was administrative secretary to the owners of the apartment complex. According to Katrine, John worked with her for a few weeks while they helped the owners prepare for some litigation. After that project, John again returned to North Dakota to care for his parents.

According to Katrine, she and John corresponded. At Easter in 1984, John flew to Atlanta, Georgia, stayed with Katrine at her summer home there, and then traveled with her to one of her condominiums at Surfside, Florida. Again, John returned to Abercrombie to be with his parents. In July, John proposed to Katrine by mail. On December 1, 1984, at Atlanta, when John was age fifty-three and Katrine was age seventy, they were married.

From the start, the marriage was impaired by separation, sickness, and John's exploitation of the relationship. After their wedding, John returned to North Dakota to be with his parents and to operate a small cafe in Abercrombie. Katrine never came to North Dakota.

Katrine had surgery for abdominal tumors in April 1985, but went back to work by mid-June without having seen John during her illness. In the summer of 1986, John closed his Abercrombie cafe and came to Surfside, where he had hernia surgery and dental work that Katrine says she paid for. In late 1986, John again returned to North Dakota where his mother was in a nursing home and his father's prostate cancer had worsened. In 1987, John again spent a few months with Katrine at Surfside, and occasionally visited his grown daughters (from prior marriages) who lived in Florida. Then, after his mother died, John spent the last few months of his father's life in North Dakota, nursing his father. After his father died, John and Katrine traveled to Hawaii in June 1988 where they sold her Hawaiian condominium.

In September 1988, Katrine had surgery for lung cancer, and spent most of the following year convalescing at her Atlanta home. During this time, Katrine says that John sold much of her property, seized her jewelry, and transferred her money to himself, leaving her nearly penniless. According to Katrine, John squandered her funds for accumulated child and spousal support that he owed, for a costly dental implant, and for extravagant fishing and hunting equipment and expeditions.

Katrine claims that, on February 18, 1990, at her Atlanta home, John told her that he intended to place her in a psychiatric nursing home. When she refused to be confined, John became enraged and attacked her with a kitchen knife, Katrine says. What happened next is not known, but John soon died from a gunshot wound caused by Katrine. Charged with murder, Katrine pleaded self-defense. Later, a Georgia jury acquitted her of murder and voluntary manslaughter charges, but found her guilty of misdemeanor involuntary manslaughter.[1]

John's will was filed with the probate court in Richland County, North Dakota, where John owned his parents' former home. The will directs division of John's property among his three daughters, and does not provide for Katrine. The will, dated July 4, 1988, was witnessed by Katrine and two other witnesses in Georgia. The will directs "that my burial be in my former hometown, of Abercrombie, North

---

1. In North Dakota a surviving spouse who "feloniously and intentionally kills the decedent" is not entitled to inherit from the deceased. NDCC 30.1-10-03(1). Similarly, in Florida, a "surviving person who unlawfully and intentionally kills or participates in procuring the death of the decedent is not entitled to any benefits under the will or under the Florida Probate Code, ...." Fla.Stat. § 732.802(1) (1989). In each state, the applicable law says that "the estate of the decedent passes as if the killer had predeceased the decedent."

"A final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section. In the absence of a conviction of felonious and intentional killing, the court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this section." NDCC 30.1-10-03(5). *See In Matter of Estates of Josephsons*, 297 N.W.2d 444 (N.D.1980). Similarly, Florida law says, "In the absence of a conviction of murder in any degree, the court may determine by the greater weight of the evidence whether the killing was unlawful and intention-

al for purposes of this section." Fla.Stat. § 732.-802(5) (1989). Thus, a criminal acquittal is not conclusive for probate.

Although Katrine is not a beneficiary of John's will, she has petitioned for an elective share by a surviving spouse. North Dakota and Florida each authorize a surviving spouse to elect a share of the estate. *See* NDCC 30.1-05-01, et seq. and Fla.Stat. § 732.201, et seq. (1989). NDCC 30.1-05-01(1) is conditioned upon the death of "a married person domiciled in this state," and subsection 2 says that the right of a surviving spouse of a married person not domiciled in this state "is governed by the law of the decedent's domicile at death." Fla.Stat. § 732.-205 says: "No elective share in Florida property of a decedent not domiciled in Florida shall exist."

Katrine's right to an elective share of the estate remains to be determined. The law of John's domicile will likely control the determination. *See* Restatement (Second) on Conflict of Laws § 265 (1969). (Law of the deceased spouse's domicile governs the right of a surviving spouse to elect a forced share of the estate.)

Dakota," begins with the heading "State of Florida" and "County of Dade," and declares that John is "a resident of said State and County aforesaid."

Less than thirty days after John's death,[2] Virginia Burshiem, John's sister-in-law, petitioned the Richland County court on March 16, 1990, for appointment as personal representative of John's estate. His three daughters waived appointment and consented to their aunt's appointment as personal representative.

On May 17, 1990, Katrine petitioned the Richland County court for formal testacy proceedings to determine John's domicile at death, to contest the informal appointment of Virginia as personal representative, and to restrain the personal representative from acting. The Richland County court temporarily restrained the personal representative but, on June 5, 1990, after a brief hearing, the court dissolved the restraint. Later, Katrine petitioned for an elective share by a surviving spouse. *See* footnote 1. Katrine's claim to an elective share of the estate remains to be decided.

After a trial on the question of domicile, the trial court concluded that "after John Burshiem moved to North Dakota [in 1982]

he never departed except for short visits or for purposes of business," and that his "domicile at the date of his death was Abercrombie, North Dakota." On December 31, 1991, the probate court ordered:

> That the Decedent, at the time of his death, was a resident of Abercrombie, Richland County, North Dakota.

> That Virginia Burshiem is formally appointed Personal Representative of the Estate of John Burshiem.

Without the aid of an attorney,[3] Katrine appeals.[4]

On appeal, Katrine chiefly challenges the trial court's designation of North Dakota, rather than Florida, as John's domicile. More than venue is at stake. Even "if the decedent was not domiciled in this state," venue for the first probate proceeding after a decedent's death is proper "in any county where property of the decedent was located at the time of his death" whether or not the decedent was domiciled in that county. NDCC 30.1–13–01(1). Domicile is important for determining the law that governs the decedent's estate, the interpretation of his will, and, importantly here as footnote 1 explains, the right of the surviv-

2. Katrine argues that the personal representative was appointed prematurely. NDCC 30.1–14–07(1) says:

 Upon receipt of an application for informal appointment of a personal representative other than a special administrator as provided in section 30.1–17–14, if at least one hundred twenty hours have elapsed since the decedent's death, the court, after making the findings required by section 30.1–14–08, shall appoint the applicant subject to qualification and acceptance. *If the decedent was a nonresident, the court shall delay the order of appointment until thirty days have elapsed since death unless the personal representative appointed at the decedent's domicile is the applicant or* unless the decedent's will directs that the estate be subject to the laws of this state.
 * * *

 (Emphasis supplied).

3. Katrine was represented by counsel until March 19, 1991, when the trial court allowed her counsel to withdraw. "A person acting as his [or her] own attorney is equally bound by rules of procedure as one represented by counsel, even if that person lacks understanding of legal procedures." *Vinje v. Sabot,* 477 N.W.2d 198, 199 (N.D.1991).

4. Although appealability of the Richland County court's order was not challenged on this appeal, we consider appealability on our own initiative. *Ceartin v. Ochs,* 479 N.W.2d 863 (N.D.1992). In this case, we conclude that the order appointing a personal representative is final and reviewable.

 NDCC 30.1–02–06.1 directs that "the right to appellate review, interlocutory appeal, ... and power of the appellate court, is governed by the rules applicable to the appeals to the supreme court...." However, NDCC 30.1–12–07 says that "a proceeding for appointment of personal representative is concluded by an order making or declining the appointment." *See Matter of Estate of Starcher,* 447 N.W.2d 293, 295–296 (N.D.1989).

 In *Jarmin v. Shriners Hospitals,* 450 N.W.2d 750 (N.D.1990), a personal representative was removed by court order. The ousted personal representative appealed. "We believe that Jarmin's appeal from his removal as personal representative was independent from his other proceedings regarding the final accounting, and was made from a concluding order on the legatee's petition for removal." *Id.* at 751 n. 3. We held that the removal order was appealable.

ing spouse to elect a forced share of the estate.

Domicile usually controls the choice of law for the probate. The effect of domicile on that choice of law shows up in many parts of the Uniform Probate Code. In addition to the rules on the elective right of a surviving spouse that are summarized in footnote 1, NDCC 30.1–13–01(4) [5], 30.1–13–03(7) [6], and 30.1–14–08(2) [7], among others, illustrate the effect of domicile on the choice of the rule for a particular feature of the probate. In sum, determination of domicile is important to avoid inconsistent administrations of the decedent's property in different states.

For consistent administration, a claim of domicile in another state creates special tasks for the probate court. The court "after any hearing that may be necessary, ... shall determine the decedent's domicile at death...." NDCC 30.1–15–08 [8]. The court must take into consideration any proceedings elsewhere that affect the determination of domicile:

*Appointment or testacy proceedings— Conflicting claim of domicile in another state.*—If conflicting claims as to the domicile of a decedent are made in a formal testacy or appointment proceeding commenced in this state, and in a testacy or appointment proceeding after notice pending at the same time in another state, the court of this state must stay, dismiss, or permit suitable amendment in the proceeding here unless it is determined that the local proceeding was commenced before the proceeding elsewhere. The determination of domicile in the proceeding first commenced must be accepted as determinative in the proceeding in this state.

NDCC 30.1–13–02.[9] Different portions of a decedent's estate should not be subjected

---

5. NDCC 30.1–13–01(4) says:

For the purpose of aiding determinations concerning location of assets which may be relevant in cases involving nondomiciliaries, a debt, other than one evidenced by investment or commercial paper or other instrument in favor of a nondomiciliary, is located where the debtor resides, or, if the debtor is a person other than an individual, at the place where it has its principal office. Commercial paper, investment paper, and other instruments are located where the instrument is. An interest in property held in trust is located where the trustee may be sued.

6. NDCC 30.1–13–03(7) says:

A personal representative appointed by a court of the decedent's domicile has priority over all other persons except where the decedent's will nominates different persons to be personal representative in this state and in the state of domicile. The domiciliary personal representative may nominate another, who shall have the same priority as the domiciliary personal representative.

7. NDCC 30.1–14–08(2) says:

Unless section 30.1–17–12 controls, the application must be denied if it indicates that a personal representative who has not filed a written statement of resignation as provided in subsection 3 of section 30.1–17–10 has been appointed in this or another county of this state, that, unless the applicant is the domiciliary personal representative or his nominee, the decedent was not domiciled in this state and that a personal representative whose appointment has not been terminated has been appointed by a court in the state of domicile,

or that other requirements of this section have not been met.

8. Additionally, NDCC 30.1–15–08 says:

A final order of a court of another state determining testacy, the validity or construction of a will, made in a proceeding involving notice to and an opportunity for contest by all interested persons must be accepted as determinative by the courts of this state if it includes, or is based upon, a finding that the decedent was domiciled at his death in the state where the order was made.

The Editorial Board Comment with this section explains:

This section is framed to apply where a formal proceeding elsewhere has been previously concluded. Hence, if a local proceeding is concluded before formal proceedings at domicile are concluded, local law will control. Informal proceedings by which a will is probated or a personal representative is appointed are not proceedings which must be respected by a local court under either section 30.1–13–02 or this section.

9. The Editorial Board Comment with this section explains why:

This section is designed to reduce the possibility that conflicting findings of domicile in two or more states may result in inconsistent administration and distribution of parts of the same estate. Section 30.1–15–08 dealing with the effect of adjudications in other states concerning testacy supports the same general purpose to use domicilary law to unify succession of property located in different states.

to varying dispositions simply because the courts of separate states reach different conclusions about the decedent's domicile.

We are informed that probate proceedings for John's estate are also pending in Georgia and Florida. Yet we do not know from this record when they were begun, who has been made parties, or what their current status is. The status of these other proceedings should be taken into account upon remand. The final determination of John's domicile will largely govern the administration and distribution of his property.

■ A person may have two or more physical residences, as distinguished from that person's legal residence that is the person's domicile. *Dietz v. City of Medora*, 333 N.W.2d 702, 704 (N.D.1983). Domicile is synonymous with residence "in law." NDCC 54–01–26; *B.R.T. v. Executive Director of Social Service Board*, 391 N.W.2d 594, 598 (N.D.1986). Since domicile and legal residence are synonymous, the statutory rules for determining the place of residence are the rules for determining domicile. Under NDCC 54–01–26(2) and (7), there can be only one domicile, and a domicile can be changed only by the union of act and intent.

■ Domicile is a question of fact. *Keating v. Keating*, 399 N.W.2d 872, 874 (N.D.1987). To find a change of domicile, the fact of a physical presence at a residence must concur with the intent to make that place the legal residence, "the union of act and intent." NDCC 54–01–26(7); *Schillerstrom v. Schillerstrom*, 75 N.D. 667, 32 N.W.2d 106, 115 (1948). The person's intent must be determined from the person's conduct and declarations. *Schillerstrom*, 32 N.W.2d at 115. A person's declarations about his home, residence, or domicile are evidence of his intent, including a state-

ment contained in a formal legal document like a will. Restatement (Second) on Conflict of Laws vol. 1, 81–83, *Special Note on Evidence For Establishment of a Domicile of Choice* (1969). The trial court must find the fact of domicile from the evidence of the person's acts *and* declarations.

■ "Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." NDRCivP 52(a). A finding of fact is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made. *Keating*, 399 N.W.2d at 874. A finding of fact may also be clearly erroneous if it is based on a mistaken view of the applicable law. *Estate of Ostby*, 479 N.W.2d 866 (N.D. 1992). In this case, we conclude that the trial court determined John's domicile with a mistaken view of applicable law.

■ The trial court determined that John was domiciled in North Dakota. This finding was largely based on testimony by his three daughters and his brother, indicating that John spent nearly eighty percent of the time since 1983 in North Dakota. The trial court found that his North Dakota driver's license, his North Dakota resident's hunting license, and his extended presence here proved that he was domiciled in North Dakota. The trial court reasoned:

Sometime in the latter part of 1982 o[r] 1983 John retired and reached an agreement with his parents where he would come to Abercrombie, North Dakota, his home town. He would live there with them, he would take care of them, and when they became deceased he would have their home to be his own. In response to this agreement John did move to Abercrombie, North Dakota and from that time until the date of his death he

lived in Abercrombie, he made improvements on the home, he worked in Abercrombie, he owned property in Abercrombie, whenever he left Abercrombie he returned to live there again. John had children in Florida whom he visited on holidays and special occasions. His average stay away from Abercrombie seemed to be a period of not more than a couple of weeks. He visited his wife whom he married in 1984, mainly in Georgia and most instances when he visited his wife he had a motive for doing so. The motive was almost always generated by a need of money or help of some kind. It is undisputed that he spent very little time with his wife after their marriage. The Petitioner, Katrine, herself testified concerning the lack of attention she received. She testified of his attempt to kill her so that he might obtain her property. Katrine's lone witness testified that John told her that he wanted Katrine dead more than anything in the world, he wanted to be able to travel, he wanted to feel important, he wanted to have a Jaguar.

The evidence painted a picture clearly of a person who was willing to sign anything and do anything which would result in financial gain to himself. The evidence further portrayed the picture of a person who fully intended to live in Abercrombie, North Dakota, for the rest of his life once he was able to obtain all of the money and property belonging to his wife.

Katrine disputes that John was domiciled in North Dakota. From her own testimony, testimony of a friend from Georgia, and documentary evidence, Katrine argues that John designated Florida as his residence on his federal income tax returns for the last five years; John had not filed a state income tax return in North Dakota as he would have been required to do as a North Dakota resident; John claimed a homestead tax-exemption for the Surfside condominium as a Florida resident; John supplied information to the Social Register of Greater Miami indicating that he resided in Florida; and John registered and voted in Florida. *See State ex rel. Sathre v. Mood-*

*ie,* 65 N.D. 340, 258 N.W. 558 (1935). (North Dakota resident, who lived for twenty months, registered, and voted in Minnesota during 1929–1931, had not been a resident of North Dakota for five years next preceding the 1934 election, and was not constitutionally qualified to be Governor.) Katrine urges that, cumulatively, her evidence demonstrates that the trial court's finding of John's domicile is erroneous.

While Katrine's evidence is impressive, we conclude that the trial court overlooked the legal effect of a more important factor. The trial court did not consider the declaration expressed in John's will that he was a "resident" of "State of Florida" and "County of Dade." This declaration is complemented by the will's direction that his burial be "in my *former* hometown of Abercrombie, North Dakota." (Our emphasis). The will declares Florida as John's domicile, and thus demonstrates a strong intention that his domicile was in Florida, and that the law of Florida should govern his testamentary dispositions.

A forum state "will give effect to a provision in the will that it should be construed in accordance with the rules of construction of a particular state," the Restatement declares, at least for property other than real estate. Restatement (Second) on Conflict of Laws § 264 cmt. e (1969). The Restatement goes on to say:

> Despite the absence of an express designation, it may be apparent from the language of the will or from other circumstances that the testator wished to have the local law of a particular state govern the construction of the will. In such a case, the rules of construction of this state will be applied.

*Id.* at p. 127. A will's declaration of domicile should be respected if it sufficiently concurs with the declarant's conduct to evidence "the union of act and intent" for domicile.

Precedent has long held that a declaration in a will is evidence of domicile, often said to be of "great weight" and "high character," though not conclusive if the evidence of the testator's residence is so inconsistent with the declaration that it

cannot stand. *Ambrose v. Vandeford,* 277 Ala. 66, 167 So.2d 149, 153 (1964); *Cromwell v. Neeld,* 15 N.J.Super. 296, 83 A.2d 337, 340 (1951); *Wilberding v. Miller,* 106 N.E. 665, 670 (Ohio 1913); *Ennis v. Smith,* 55 U.S. 400, 422, 14 L.Ed. 472, 482 (1852) (Deciding the choice of law for disposition of the American estate of revolutionary hero General Kosciusko: "[H]is declarations [in wills of 1806 and 1816] that his residence was in France, in the way they were made in his wills, with an interval of ten years between them, would, upon the authority of adjudged cases, be sufficient to establish, prima facie, his domicile in France.")

 The law of a state designated by the decedent's will should control the effect of the will. Our probate code voices this as a directive:

> The meaning and legal effect of a disposition in a will shall be determined by the local law of a particular state selected by the testator in his instrument unless the application of that law is contrary to the provisions relating to the elective share described in chapter 30.1–05, the provisions relating to exempt property and allowances described in chapter 30.1–07, or any other public policy of this state otherwise applicable to the disposition.[10]

NDCC 30.1–09–02. The Editorial Board Comment with this section explains:

> This provision ... enables a testator to select the law of a particular state for purposes of interpreting his will without regard to the location of his property covered thereby. So long as local public policy is accommodated, the section should be accepted as necessary and desirable to add to the utility of wills.[11]

Thus, legal pundits, precedent, and probate law join in directing that a declaration of

domicile in the decedent's will should designate the domicile and the choice of law for that estate, unless there is an overriding reason otherwise, such as clear and convincing evidence of inconsistent acts and conduct.

We conclude that the trial court erroneously determined John's domicile without properly considering the declaration of domicile in his will. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE and LEVINE, JJ., concur.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, and did not participate in this decision. Justice JOHNSON not being a member of this Court at the time this case was heard did not participate in this decision.

---

**10.** Another relevant statute, NDCC 30.1–09–03, declares that "[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions." *See Estate of Ostby,* 479 N.W.2d 866 (N.D.1992). Furthermore, "unless a duly executed will is ambiguous, the testamentary intent is derived from the will itself, not from extrinsic evidence." *Id.*

**11.** *See also* Fla.Stat. § 731.106(2) (1989):

When a nonresident decedent who is a citizen of the United States or a citizen or subject of a foreign country provides in his will that the testamentary disposition of his tangible or intangible personal property having a situs within this state, or of his real property in this state, shall be construed and regulated by the laws of this state, the validity and effect of the dispositions shall be determined by Florida law. * * *