Larry STRATTON, Plaintiff,

v.

Richard ROSE, as Personal Representative of the Estate of Hilman Hofland, Deceased, Defendant and Appellant,

Dan Hofland, Rheta Hofland Caddell, C. Susan Anhorn, Donna Hofland Engel, Jane Sveen, Constance Hofland Johnson, Marianne Hofland, Defendants, Cross–Claimants and Appellees,

and

Gladys Hofland, Defendant and Cross–Claimant,

Crista Ministries, Allan Hofland, Margaret Kulak, Hazel Strom, Florence Jackson, Additional Defendants and Appellees,

and

American Baptist Church of the Northwest, Additional Defendant.

Civ. No. 910218.

Supreme Court of North Dakota.

April 21, 1992.

Jonathan C. Eaton (argued), of Eaton, Van de Streek & Ward, Minot, and Roger Schell Law Firm, Bottineau, for defendant and appellant.

Todd L. Cresap, of Olson, Sturdevant & Burns, Minot, for defendants, cross-claimants and appellees.

Pearson, Christensen, Larivee & Fischer, Grand Forks, for additional defendants and appellees. Appearance by Ronald F. Fischer.

VANDE WALLE, Justice.

Richard Rose, the personal representative of the Estate of Hilman Hofland, appealed from an order of the Bottineau County Court approving a final accounting and distribution. We reverse and remand.

At the time of his death on November 5, 1985, Hilman resided in the State of Washington. He owned some property located in Washington and real property in Bottineau County, North Dakota. Hilman's will and a codicil were admitted to probate in Washington, and Rose was appointed personal representative. Rose filed with the Bottineau County Court an authenticated copy of his Washington appointment, and the county court issued "Letters Testamentary."

Larry Stratton then commenced an action in Bottineau County Court against Rose, as personal representative of Hilman's estate, alleging that Hilman intended to leave Stratton all of the NE¼ of Section 24, Township 161 North, Range 82 West in Bottineau County and that the codicil erro-

neously described the land in that devise. Dan Hofland, Rheta Hofland Caddell, C. Susan Anhorn, Donna Hofland Engel, Jane Sveen, Constance Hofland Johnson, and Marianne Hofland [hereinafter "cross-claimants"] intervened, claiming the mineral interests in the NE¼ of Section 24. The court later ordered the joinder of Crista Ministries, Allan Hofland, Margaret Kulak, Hazel Strom, Florence Jackson, and the American Baptist Church as "additional defendants" and Gladys Hofland as an additional "cross-claimant."

The parties executed stipulations which resolved the will dispute and authorized Rose to distribute the surface of the NE¼ of Section 24 to Stratton, 70% of the mineral interests in that land to the Gladys Hofland Mineral Trust, and 30% of the mineral interests to Kulak, Strom, and Jackson in three equal shares. Rose conveyed the surface and the mineral interests pursuant to the stipulations and, as a result, the income from that property has been distributed directly to the beneficiaries since June 1989.

On February 21, 1990, the cross-claimants and Kulak, Strom, and Jackson made a motion in Bottineau County Court for an inventory and accounting of the North Dakota mineral interests and all proceeds from those interests since Hilman's death. Rose opposed the motion, asserting that the North Dakota land and mineral interests had been distributed and that the ancillary proceedings in North Dakota were completed. Rose asserted that distribution of the proceeds from the mineral interests would be made after a hearing for a final accounting and distribution scheduled for April 11, 1990, in Washington.

After the cross-claimants had an accountant review the financial information regarding the estate and prepare a final accounting and distribution of the proceeds from the North Dakota property, they

moved for approval of that accounting. Rose opposed the motion, contending that those issues should be determined in the Washington court. The Bottineau County Court denied the cross-claimants' motion and suggested that the parties " 'try a little harder' " to settle their disputes.

Thereafter, the cross-claimants and additional defendants agreed to an accounting and distribution of about $92,000 in proceeds from the North Dakota property. The cross-claimants then made a motion in Bottineau County Court for an order approving the accounting and for an order directing Rose to distribute the property according to their agreement. Rose opposed the motion, contending that a final accounting and distribution of the entire estate should be done in the domiciliary court in Washington. Alternatively, Rose requested that approval of an accounting and distribution in North Dakota should be done after formal proceedings, with notice, so that all necessary parties could appear and present evidence. The court approved the final accounting and distribution, and Rose appealed.

Rose concedes that the Bottineau County Court had jurisdiction, but argues that the court should not have exercised its jurisdiction and that it erred in approving the accounting and distribution because those issues were pending in Washington. He asserts that the Uniform Probate Code (U.P.C.)[1] favors administration of multiple-state estates in the decedent's domicile. The cross-claimants respond that the policy favoring domiciliary administration of multiple-state estates is not applicable because this case involves North Dakota settlement agreements and distribution of proceeds from the North Dakota property.

Our analysis of this issue requires a brief outline of our statutory scheme for the distribution of multiple-state estates of nonresident decedents.[2] Chapters 30.1–24

1. North Dakota adopted the Uniform Probate Code (U.P.C.) in 1973 N.D.Sess.Laws, Ch. 257, and it is codified in Title 30.1, N.D.C.C. Washington has not adopted the U.P.C. *See* Wash. Rev.Code, Title 11 (1989).

2. Section 30.1–01–06(29) [U.P.C. § 1–201(26)], N.D.C.C., defines a "nonresident decedent" as "a

decedent who was domiciled in another jurisdiction at the time of his death." For a discussion of the importance of determining domicile at the time of death, *see In the Matter of the Estate of Burshiem*, 483 N.W.2d 175 (N.D.1992).

and 30.1–25, N.D.C.C. [Article IV, U.P.C.], which deal with multiple-state estates, and the provisions in Chapters 30.1–12 through 30.1–23, N.D.C.C. [Article III, U.P.C.], "which relate to administration of estates of nonresidents are designed to coerce respect for domiciliary procedures and administrative acts to the extent possible." General Editorial Board Comment, Article IV, U.P.C. The respect and deference accorded to domiciliary procedures is intended to simplify and unify administration of multiple-state estates. Allan D. Vestal, *Multi-State Estates Under the Uniform Probate Code*, 9 Creighton L.Rev. 529 (1976); Allan D. Vestal, *Multiple–State Estates Under the Uniform Probate Code*, 27 Wash. & Lee L.Rev. 70 (1970); Richard V. Wellman, *How the Uniform Probate Code Deals With Estates that Cross State Lines*, 5 R.P.P. & T.J. 159 (1970); see 1 R. Wellman, Uniform Probate Code Practice Manual, Ch. 16 (2d ed.1977); 31 Am.Jur.2d, Executors and Administrators, §§ 1168–1213 (1989).

If a nonresident decedent leaves property in North Dakota, Chapters 30.1–24 and 30.1–25 [Article IV, U.P.C.], N.D.C.C., authorize a domiciliary foreign personal representative[3] to exercise certain powers over that property. General Editorial Board Comment, Art. IV, U.P.C. A domiciliary foreign personal representative may collect a debt or personal property by presenting the debtor or individual in possession of the property with proof of the domiciliary appointment and an affidavit stating the date of the decedent's death, that no local administration is pending, and

that the domiciliary foreign personal representative is entitled to the property. Section 30.1–24–02 [U.P.C. § 4–201], N.D.C.C. *See also* Sections 30.1–24–03 [U.P.C. § 4–202], and 30.1–24–04 [U.P.C. § 4–203], N.D.C.C.

A domiciliary foreign personal representative also "may file with a court in this state, in a county in which property belonging to the decedent is located, authenticated copies of his appointment." Section 30.1–24–05 [U.P.C. § 4–204], N.D.C.C. Thereafter, the domiciliary foreign personal representative may "exercise, as to assets in this state, all powers of a local personal representative and may maintain actions and proceedings in this state subject to any conditions imposed upon nonresident parties generally." Section 30.1–24–06 [U.P.C. § 2–205], N.D.C.C. *See* Ch. 30.1–18 [U.P.C. Art. III, Part 7], N.D.C.C. The official comments explain that those powers are the same as a local personal representative's powers in an unsupervised administration. General Editorial Board Comment, Art. IV, U.P.C.

Pursuant to Section 30.1–24–07 [U.P.C. § 4–205], N.D.C.C., the power of a domiciliary foreign personal representative to collect assets by affidavit under Section 30.1–24–02 [U.P.C. § 4–201], N.D.C.C., or to exercise the powers of a local personal representative under Section 30.1–24–06 [U.P.C. § 4–205], N.D.C.C., terminates when there is a local administration.[4] The administration of an estate is commenced by issuance of letters to a personal representative [Section 30.1–12–03 [U.P.C. § 3–103], N.D.C.C.[5]], and as part of the policy to

---

In this case, the parties do not dispute that Hilman was domiciled in Washington at the time of his death.

**3.** Section 30.1–01–06(15) [U.P.C. § 1–201(14)], N.D.C.C., defines a "foreign personal representative" as "a personal representative of another jurisdiction."

**4.** "Local administration" means administration by a personal representative appointed in this state pursuant to Chapters 30.1–12 through 30.1–23, N.D.C.C. A "local personal representative" includes any personal representative appointed in this state pursuant to appointment procedures in Chapters 30.1–12 through 30.1–23,

N.D.C.C., and excludes foreign personal representatives who acquire the power of a local personal representative pursuant to Section 30.1–24–06, N.D.C.C.

**5.** Section 30.1–12–03 [U.P.C. § 3–103], N.D.C.C., provides:

"Except as otherwise provided in chapters 30.1–24 and 30.1–25, to acquire the powers and undertake the duties and liabilities of a personal representative of a decedent, a person must be appointed by order of the court, qualify, and be issued letters. Administration of an estate is commenced by the issuance of letters."

coerce respect for domiciliary procedures and to simplify and unify administration of multiple-state estates, a domiciliary foreign personal representative has priority to be appointed a local personal representative for a local administration. Sections 30.1–13–03(7) [U.P.C. § 3–203(g)] and 30.1–17–11(2) [U.P.C. § 3–611(b)], N.D.C.C. The procedures for local administration are governed by Section 30.1–24–08, [U.P.C. § 4–207], N.D.C.C.:

> *"Ancillary and other local administrations—Provisions governing.*—In respect to a nonresident decedent, the provisions of chapters 30.1–12 through 30.1–23 of this title govern:
>
> > "1. Proceedings, if any, in a court of this state for probate of the will, appointment, removal, supervision, and discharge of the local personal representative, and *any other order concerning the estate.*
> >
> > "2. The status, powers, duties, and liabilities of any local personal representative and the rights of claimants, purchasers, distributees, and others in regard to a local administration."
>
> [Emphasis added].

On appeal, Rose argues that "no petition requesting appointment of a local personal representative for local administration was filed by the Personal Representative or anyone else." He asserts there was no local administration of the estate. We disagree.

▮ Rose initially filed with the Bottineau County Court an authenticated copy of his Washington appointment. Without objection, the Bottineau County Court issued "Letters Testamentary," indicating that Hilman's will had been admitted to informal probate and that Rose had been appointed personal representative of the estate in North Dakota. The court's action commenced local administration of the estate. Section 30.1–12–03 [U.P.C. § 3–103], N.D.C.C. *See* fn. 5. Stratton then sued Rose, seeking a favorable interpretation of Hilman's will. The court observed that Stratton's action was mistakenly filed as a civil action and should have been filed as part of the probate. As part of that probate, the cross-claimants moved for a final accounting and distribution. *See* Section 30.1–21–01(1) [U.P.C. § 3–1001], N.D.C.C.[6] Stratton's action and the motion for a final accounting and distribution constituted a petition by an interested person for formal proceedings[7] and sought "an order con-

---

6. Section 30.1–21–01(1) [U.P.C. § 3–1001(a)], N.D.C.C., provides:

"1. A personal representative or any interested person may petition for an order of complete settlement of the estate. The personal representative may petition at any time, and any other interested person may petition after one year from the appointment of the original personal representative, except that no petition under this section may be entertained until the time for presenting claims which arose prior to the death of the decedent has expired. The petition may request the court to determine testacy, if not previously determined, to consider the final account or compel or approve an accounting and distribution, to construe any will or determine heirs and adjudicate the final settlement and distribution of the estate. After notice to all interested persons and hearing the court may enter an order or orders, on appropriate conditions, determining the persons entitled to distribution of the estate, and, as circumstances require, approving settlement and, after receiving satisfactory evidence of payment of any estate tax due, directing or approving distribution of the estate and discharging the personal representative from further claim or demand of any interested person."

7. Section 30.1–01–06 [U.P.C. § 1–201], N.D.C.C., provides:

"16. 'Formal proceedings' means those conducted before a judge with notice to interested persons.

    \*    \*    \*    \*    \*    \*

"21. 'Interested person' includes ... devisees ... having a property right in ... the estate of a decedent....

    \*    \*    \*    \*    \*    \*

"35. 'Petition' means a written request to the court for an order after notice."

Section 30.1–12–05 [U.P.C. § 3–105], N.D.C.C., provides:

"Persons interested in decedents' estates may apply to the court for determination in the informal proceedings provided in chapters 30.1–12 through 30.1–23, and may petition the court for orders in formal proceedings within the court's jurisdiction including but not limited to those described in chapters 30.1–12 through 30.1–23. The court has exclusive jurisdiction of formal proceedings to determine how decedents' estates subject to the laws of this state are to be administered, expended, and distributed, including actions to determine title to property alleged to belong to the

cerning the estate" within the meaning of Section 30.1–24–08 [U.P.C. § 4–207], N.D.C.C. In view of Stratton's action and the issuance of "Letters Testamentary," to which Rose did not object, we conclude that these proceedings were a local administration governed by Chapters 30.1–12 through 30.1–23, N.D.C.C.

Section 30.1–19–16 [U.P.C. 3–816], N.D.C.C., applies to local administration and distribution of multiple-state estates:

> "The estate of a nonresident decedent being administered by a personal representative appointed in this state shall, if there is a personal representative of the decedent's domicile willing to receive it, be distributed to the domiciliary personal representative for the benefit of the successors of the decedent unless:

> "1. By virtue of the decedent's will, if any, and applicable choice of law rules, the successors are identified pursuant to the local law of this state without reference to the local law of the decedent's domicile;

> "2. The personal representative of this state, after reasonable inquiry, is unaware of the existence or identity of a domiciliary personal representative; or

> "3. The court orders otherwise in a proceeding for a closing order under section 30.1–21–01 or incident to the closing of a supervised administration.

> "In other cases, distribution of the estate of a decedent shall be made in the manner provided elsewhere in this title."

That statute states the general rule that a local personal representative shall deliver the local estate of a nonresident decedent to the domiciliary personal representative for the benefit of the successors and is consistent with the purpose of coercing respect for domiciliary procedures and unifying administration of multiple-state estates. However, the statute outlines exceptions to that general rule, and the cross-claimants assert that the exceptions in subsections (1) and (3) are applicable to this case. They argue that, pursuant to subsection (1), the

parties' stipulations identified the successors to the North Dakota property under local law. They also argue that, pursuant to subsection (3), the court may order a local distribution if an interested person petitions for closing under Section 30.1–21–01(1) [U.P.C. § 3–1001(a)], N.D.C.C. *See* fn. 6.

One commentator has explained the exceptions in subsections (1) and (3):

> "One obvious application of this exception [in subsection 1] would be in the case of real property located in the forum state. Under the usual conflicts rule this property will pass according to the law of the state of situs—the forum state—and therefore the property would not be distributed to the domiciliary personal representative. The apparent reasoning is that if the law of the forum state is to be applied, the forum state should apply it.

> "... Finally, [subsection 3 provides that] a court in a proceeding for closing under [Section 30.1–21–01 [U.P.C. § 3–1001], N.D.C.C.], or in a supervised administration, can order local distribution or make any other order regarding distribution which it feels appropriate." Allan D. Vestal, *Multiple–State Estates Under the Uniform Probate Code, supra,* 27 Wash. & Lee L.Rev. at 86–87.

*See also,* 1 R. Wellman, Uniform Probate Code Practice Manual, *supra,* p. 442.

■ In this case, Rose conveyed the surface and the mineral interests pursuant to the parties' stipulations. The principal remaining dispute appears to involve distribution of the proceeds earned from that property after Hilman's death and before the effective date of the stipulations. According to counsel for Rose, those proceeds are located in Washington.

In jurisdictions where the U.P.C. has not been adopted, it has generally been held that a local court has discretion to either order a local distribution, or to order the local personal representative to deliver the estate to the domiciliary personal repre-

estate and of any action or proceeding in which property distributed by a personal representative or its value is sought to be subject-

ed to rights of creditors or successors of the decedent."

sentative for the benefit of successors. *See Matter of Estate of Allen,* 239 N.W.2d 163 (Ia.1976); Restatement (Second) of Conflicts of Laws, § 364 (1971); 34 C.J.S., Executors and Administrators, § 1005 (1942). We believe Section 30.1–19–16 [U.P.C. § 3–816], N.D.C.C., is consistent with that rule and contemplates the exercise of discretion by the local court. That interpretation is consistent with the discretionary standard underlying principles of comity. *Lohnes v. Cloud,* 254 N.W.2d 430 (N.D.1977). Accordingly, we review the Bottineau County Court order under the abuse-of-discretion standard.

Within the context of Section 30.1–19–16 [U.P.C. § 3–816], N.D.C.C., the distribution of the proceeds involves choice-of-law issues. Generally, personal property is governed by the law of the owner's domicile [Section 47–07–01, N.D.C.C.], and real property located in this state is governed by our laws. Section 47–04–01, N.D.C.C. Section 30.1–12–01 [U.P.C. § 3–101], N.D.C.C., provides that, upon death, a person's real and personal property devolves to the devisees, subject to administration. *Feickert v. Frounfelter,* 468 N.W.2d 131 (N.D.1991); *see Green v. Gustafson,* 482 N.W.2d 842 (N.D.1992). Additionally, Section 59–04.1–05(2)(a), N.D.C.C., provides that devisees of specific property are entitled to income earned from that property during the administration of the estate. Washington law provides for a similar result. RCW § 11.04.250,[8] and RCW § 11.104.050(2).[9] Interrelated issues about these proceeds involve the parties' stipulations as well as possible claims for administration.[10]

8. RCW § 11.04.250 provides:
"When a person dies seized of lands, tenements or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration and any other charges for which such real estate is liable under existing laws. No administration of the estate of such decedent, and no decree of distribution or other finding or order of any court shall be necessary in any case to vest such title in the heirs or devisees, but the same shall vest in the heirs or devisees instantly upon the death of such decedent: *Provided,* That no person shall be deemed a devisee until the will has been probated. The title and right to possession of such lands, tenements, or hereditaments so vested in such heirs or devisees, together with the rents, issues and profits thereof, shall be good and valid against all persons claiming adversely to the claims of any such heirs, or devisees, excepting only the personal representative when appointed, and persons lawfully claiming under such personal representative; and any one or more of such heirs or devisees, or their grantees, jointly or severally, may sue for and recover their respective shares or interests in any such lands, tenements, or hereditaments and the rents, issues and profits thereof, whether letters testamentary or of administration be granted or not, from any person except the personal representative and those lawfully claiming under such personal representative."

9. RCW 11.104.050(2)(a) provides:
"(2) Unless the will or the court otherwise provides, income from the assets of a decedent's estate after the death of the testator and before distribution, including income from property used to discharge liabilities, shall be determined in accordance with the rules applicable to a trust under this chapter and distributed as follows:
"(a) To beneficiaries of any specific bequest, legacy, or devise, the income from the property bequeathed or devised to them respectively, less taxes, ordinary repairs, and other expenses of management and operation of the property, and appropriate portions of interest accrued since the death of the testator and of taxes imposed on income (excluding taxes on capital gains) which accrue during the period of administration;"

10. On appeal, Rose suggested that the assets of the estate were insufficient to satisfy some of the claims against the estate. Section 30.1–01–06(5) [U.P.C. § 1–201(4)], N.D.C.C., defines "claims" to include expenses of administration. Section 30.1–19–15 [U.P.C. 3–815], N.D.C.C., describes the duties of personal representatives regarding multiple-state estates which are insufficient to satisfy all claims:
"1. All assets of estates being administered in this state are subject to all claims, allowances, and charges existing or established against the personal representative wherever appointed.
"2. If the estate, either in this state or as a whole, is insufficient to cover all family exemptions and allowances determined by the law of the decedent's domicile, prior charges, and claims, after satisfaction of the exemptions, allowances, and charges, each claimant whose claim has been allowed either in this state or elsewhere in administrations of which the personal representative is aware, is entitled to receive payment of an equal proportion of his claim. If a preference or security in regard to a claim is allowed in another jurisdiction but not in this state, the creditor

In their motion for approval of the final accounting and distribution, the cross-claimants argued that the stipulations and state law favored distribution of the proceeds from the North Dakota property in the local administration. Although Rose primarily asked the Bottineau County Court to defer to the Washington court for a final accounting and distribution, Rose alternatively asked the court to consider the proposed final accounting and distribution in a formal proceeding so the necessary parties could appear and present evidence. The parties did not specifically address the applicability of Section 30.1–19–16 [U.P.C. § 3–816], N.D.C.C. The court said "[t]aking into consideration all of the arguments which have been made to this Court, it is the opinion of this Court that the Defendants/Crossclaimants Motion for Approval of Final Accounting and Distribution be granted." The court's decision did not provide any further explanation about the laws applicable to the proceeds, or about the applicability of Section 30.1–19–16 [U.P.C. § 3–816], N.D.C.C. Significantly, the court did not explain why it did not defer to the domiciliary administration to effectuate the dominant purpose of simplifying and unifying administration of the multiple-state estate. Neither did the court address any issues about possible claims against the estate. *See* fn. 10. The court effectively ignored the significance of domicile and domiciliary proceedings under the U.P.C. *See In the Matter of the Estate of Burshiem*, 483 N.W.2d 175 (N.D.1992).

Under these circumstances we conclude that the Bottineau County Court abused its discretion in approving the final accounting and distribution without considering Section 30.1–19–16 [U.P.C. § 3–816], N.D.C.C.; without explaining why it did not defer to the domiciliary court in Washington[11] to effectuate the purpose of simplifying and unifying administration of multiple-state estates; and without affording Rose an opportunity to present evidence about the Washington accounting and possible claims against the estate.

Accordingly, we reverse the order and remand to the county court for consideration of Section 30.1–19–16 [U.P.C. § 3–816], N.D.C.C., the laws applicable to the proceeds, the usual rule of deference to the domiciliary jurisdiction, and any possible claims against the estate.

ERICKSTAD, C.J., LEVINE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting as a member of the Court to fill the vacancy created by the resignation of H.F. GIERKE, III, J. JOHNSON, J., not being a member of this Court at the time this case was heard, did not participate in this decision.

so benefited is to receive dividends from local assets only upon the balance of his claim after deducting the amount of the benefit.

"3. In case the family exemptions and allowances, prior charges, and claims of the entire estate exceed the total value of the portions of the estate being administered separately, and this state is not the state of the decedent's last domicile, the claims allowed in this state shall be paid their proportion if local assets are adequate for the purpose, and the balance of local assets shall be transferred to the domiciliary personal representative. If local assets are not sufficient to pay all claims allowed in this state the amount to which they are entitled, local assets shall be marshaled so that each claim allowed in this state is paid its proportion as far as possible, after taking into account all dividends on claims allowed in this state from assets in other jurisdictions."

On appeal Rose also indicated that the difference between the Washington and the North Dakota accountings was about $50,000. The parties do not dispute that a final accounting and distribution in Washington was not made part of the record before the Bottineau County Court or before this court, and we are unable to assess any differences between the Washington and the North Dakota accountings.

11. According to Rose, the Washington proceedings have been held in abeyance.