# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-01018-SCT

### CONSOLIDATED WITH

### NO. 97-CA-00814-SCT

*BILL McBRIDE*

*v.*

*MERIDIAN PUBLIC IMPROVEMENT CORPORATION AND THE CITY OF MERIDIAN, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/96 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN R. REEVES |
| ATTORNEYS FOR APPELLEES: | TOMMIE SULLIVAN CARDIN |
| | WILLIAM C. HAMMACK |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/12/98 |
| MOTION FOR REHEARING FILED: | 11/25/98 |
| MANDATE ISSUED: | 4/12/99 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. In April, 1993, the mayor and city council of Meridian, Mississippi elected to finance the purchase of property and construction of a public improvement project identified as "The Downtown Plaza Project" through Mississippi's public "Lease-Purchase-Law", Miss. Code Ann. § 31-8-1 et seq. (1990) with the issuance of Certificates of Participation ("COPS"). In March 1994, the City elected to use the same financing mechanism for a public improvement project identified as "The Multi-Modal Project."

¶2. Pursuant to Miss. Code Ann. § 31-13-5 (1990), both transactions were submitted to the State's Bond Attorney who rendered his opinion on their compliance with the law. Subsequently, both transactions were presented to the Chancery Court of Lauderdale County for validation. On May 26, 1993, for the Downtown Plaza Project and on August 12, 1994, for the Multi-Modal Project, the Chancery Court entered a Decree of Validation affirming the Opinions of the State's Bond Attorney. After the validations,

the COPS were issued.

¶3. On August 19, 1996, Bill McBride, a taxpayer of the City of Meridian, filed his complaint against the City and the Meridian Public Improvement Corporation ("MPIC") attacking the validity of the agreements entered into by the City with MPIC. McBride sought to preliminarily and permanently enjoin the City from paying any portion of any indebtedness incurred by or on behalf of MPIC, to enjoin the City from proceeding with the projects, to dissolve MPIC and enjoin it from conducting any business whatsoever, to have the COPS declared null and void, to have a judgment entered against the defendants for all sums of taxpayer money expended in violation of the law, and for attorney's fees and all costs of bringing the action.

¶4. On August 23, 1996, the City filed its Motion to Dismiss Complaint or in the alternative for Judgment on the Pleadings or for Summary Judgment and for Sanctions. The City maintained that McBride's Complaint failed to state a claim upon which relief could be granted, and that all provisions and requirements of Miss. Code Ann. § 31-8-1 et seq. (1990) and other applicable laws had been met by the City and MPIC with regard to the subject transactions. On August 29, 1996, MPIC joined in the City's Motion.

¶5. On August 26, 1996, the City filed its Answer and Defenses essentially arguing the same issues presented in its Motion. The thrust of the City's Answer was that because the challenged COPS were properly validated pursuant to the provisions of Miss. Code Ann. § 31-13-3 (1990), without objection, McBride's action was barred. On September 3, 1996, MPIC joined in the City's Answer.

¶6. On September 4, 1996, McBride filed a Motion for Recusal requesting that Chancellor Springer recuse herself due to her prior employment with law firms which had previously represented the City and which at that time represented the City. McBride's Motion for Recusal was denied on that same day.

¶7. On September 6, 1997, the Chancellor dismissed McBride's Complaint pursuant to Miss. R. Civ. P. 12(b)(1), 12(b)(6) and 12(c), finding that the validation proceedings constituted res judicata on every issue raised in McBride's Complaint.

¶8. McBride timely filed his Notice of Appeal from the Chancellor's Opinion and Judgment granting the City's Motion to Dismiss on September 20, 1996.

¶9. On May 22, 1997, a subsequent hearing was conducted by the Chancellor on the City's Motion for Fees and Costs Pursuant to the Litigation Accountability Act of 1988. By Opinion and Judgment dated June 25, 1997, the Chancellor entered judgment in favor of the City against McBride's attorney, John R. Reeves, in the amount of $9778.93.

¶10. McBride and Reeves timely filed a Notice of Appeal on June 26, 1997. This appeal bears Cause No. 97-CA-00814-SCT. It has been consolidated with McBride's first appeal, Cause No. 96-CA-01018-SCT.

¶11. McBride raises the following alleged errors for this Court's consideration and review:

**I. THE CHANCELLOR ERRED IN FAILING TO RECUSE HERSELF.**

**II. THE CHANCELLOR ERRED IN DISMISSING THE COMPLAINT PURSUANT TO M.R.C.P. 12(b)(1), 12(b)(6) AND 12(c).**

**III. THE CHANCELLOR ERRED IN HEARING THE MOTION FOR ATTORNEYS' FEES AFTER A JUDGMENT WAS RENDERED AND THE CASE WAS APPEALED TO THE MISSISSIPPI SUPREME COURT.**

**IV. THE CHANCELLOR ERRED IN ORDERING PLAINTIFF'S ATTORNEY TO PAY ATTORNEYS' FEES TO DEFENDANT UNDER THE LITIGATION ACCOUNTABILITY ACT OF 1988.**

## STATEMENT OF THE FACTS

¶12. In April 1993 and March 1994, the City of Meridian's governing authorities elected to finance the purchase of property and the construction of two public improvement projects identified as the "The Downtown Plaza Project" and the "The Multi-Modal Project" through the use of Mississippi's "Lease-Purchase Law", Miss. Code Ann. § 31-8-1 et seq. (1990). Under the Lease-Purchase Law, the City owns the real property on which the project is to be constructed. The City then leases the property to a corporation, in this instance a non-profit corporation, the MPIC. The non-profit corporation commits to cause the construction of the project, and leases the project to the City. This is accomplished through a Lease and Option to Purchase Agreement, the terms of which are consistent with Miss. Code Ann. § 31-8-9 (1990). At the same time, the non-profit corporation appoints the City, through an Agency Agreement, as its agent in connection with the "acquisition, construction, delivery and installation" of the project. This appointment is irrevocable and the City then constructs or causes the construction of the project, following the public bidding requirements.

¶13. Financing for the projects is provided through the issuance of COPS, which represent proportional interests in the Lease and Option to Purchase. In this case, Deposit Guaranty National Bank purchased the COPS to provide the proceeds to pay for the construction and financing costs for the Downtown Plaza Project. Three banks in Meridian did the same for the Multi-Modal Project. The proceeds were paid to Trustees. In the case of the Downtown Plaza Project, the amount of the COPS was $625,000 and for the Multi-Modal Project, $1,300,000. Thereafter, MPIC assigned all rights to rental proceeds to the banks.

¶14. Both transactions were submitted to the State's Bond Attorney and to the Chancery Court for approval and validation pursuant to Miss. Code Ann. § 31-13-3 et seq. (1990).

¶15. In both proceedings, the State's Bond Attorney opined that the issuance of the COPS "were conducted pursuant to lawful resolutions, order and proceedings, legally adopted and authorized , and were in strict accordance with the Constitution and laws of the State of Mississippi, including Miss. Code Ann. § 31-8-1 et seq. of the Mississippi Code of 1972, amended."

¶16. On May 26, 1993 and August 12, 1994, the Chancery Court entered Decrees of Validation affirming the Opinions of the State's Bond Attorney and declaring that the "[COPS] be, and the same hereby are, approved, confirmed and validated." Subsequent to validation, the COPS were issued for both projects.

## DISCUSSION OF LAW-- 96-CA-01018-SCT

### I. THE CHANCELLOR ERRED IN FAILING TO RECUSE HERSELF.

¶17. On September 4, 1996, McBride filed a Motion for Recusal. His Motion was heard and ruled upon that same day. McBride sought to have Chancellor Springer recuse herself because he had discovered that

she had worked for Tom Goldman, an attorney for the City who was involved with one of the projects involved in this litigation. McBride also pointed out that Chancellor Springer had worked for Bourdeaux & Jones, who was representing the City in the present case.

¶18. As it turns out, Chancellor Springer had worked for Bourdeaux & Jones for a few months prior to receiving her Mississippi license to practice law. She had been associated with the firm of Tom Goldman from 1985 to 1990 but neither of the projects in question had come into being at the time of the Chancellor's employment there.

¶19. The Chancellor considered the Motion carefully, and ruled that it should be denied.

¶20. Canon 3(C)(1) of the Code of Judicial Conduct provides in pertinent part that:

> (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

> (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

> (b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

¶21. This Court reviews a judge's refusal to recuse herself using the manifest error standard. *Bredemeier v. Jackson,* 689 So. 2d 770, 774 (Miss. 1997)(citing *Davis v. Neshoba County Gen. Hosp.,* 611 So. 2d 904, 905 (Miss. 1992)). There is no contention that Chancellor Springer was disqualified by virtue of Miss. Code Ann. § 9-1-11 (1991), therefore we review McBride's challenge under Canon 3(C)(1).

¶22. As this Court explained in *Green v. State,* 631 So. 2d 167, 177 (Miss. 1994);

> "[T]he Canon enjoys the status of law such that we enforce it rigorously, notwithstanding the lack of a litigant's specific demand." *Collins v. Dixie Transport, Inc.,* 543 So. 2d 160, 166 (Miss. 1989).

> The standard by which we determine if a judge should have disqualified himself is an objective standard under Canon 3. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Jenkins v. State,* 570 So. 2d 1191, 1192 (Miss. 1990).

> A presumption exists "that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a 'reasonable doubt' (about the validity of the presumption) [.]" *Buchanan,* 587 So. 2d at 896, quoting *Turner v. State,* 573 So. 2d 657, 678 (Miss. 1990). When a judge is not disqualified under the constitutional or statutory provisions, "the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion." *Ruffin v. State,* 481 So. 2d 312, 317 (Miss. 1985).

¶23. Nothing in the record indicates that Chancellor Springer abused her discretion in refusing to recuse herself. Apparently, she worked for Bourdeaux & Jones, who is representing the City, over a decade before the hearing of this case, and then only for a few months. Chancellor Springer's work with Tom

Goldman, who has represented the City on the projects involved in this litigation, did not involve these projects. In fact, Chancellor Springer left Goldman's office several years prior to the validation hearings, and never did any work for the City except for a lease on a hangar at the airport.

¶24. McBride did not overcome the presumption that Chancellor Springer was qualified and unbiased. He did not come remotely close to proving that a reasonable person, knowing all the facts and circumstances, would harbor doubts about Chancellor Springer's impartiality. This assignment of error is wholly without merit.

## II. THE CHANCELLOR ERRED IN DISMISSING THE COMPLAINT PURSUANT TO M.R.C.P. 12(b)(1), 12(b)(6) AND 12(c).

¶25. The COPS issued in connection with each project were validated by the Chancery Court pursuant to Miss. Code Ann. § 31-13-5 (1990) which applies to "...every form of written obligation that may be now or hereafter legally issued by any...municipality..." Miss. Code Ann. § 31-13-3 (1990); See *Cox v. Jackson Mun. Separate Sch. Dist.,* 503 So. 2d 265, 268 (Miss. 1987). Miss. Code Ann. § 13-13-5 requires that the issuer submit all papers involved in the financing to the State's Bond Attorney, who prepares an Opinion. The State's Bond Attorney is then to submit all legal papers along with his Opinion to the Chancery Court. The Clerk of the Chancery Court dockets the matter, and gives notice to the public. If on the day set for the validation hearing, there is no objection, the Chancellor is to enter a decree approving the validity of the bonds. "If no written objection is filed to the validation of the bonds, certificates of indebtedness, or other written obligations which are being validated, by any taxpayer to the issuance of same, then the validation decree shall be final and forever conclusive from its date, and no appeal whatever shall lie therefrom." Miss. Code Ann. § 31-13-5 (1990).

¶26. No objection was filed by McBride or any other taxpayer to the validity of the COPS, and the Chancery Court entered Decrees of Validation.

¶27. Miss. Code Ann. § 31-13-7 (1990) provides that:

[If the chancellor shall enter a decree confirming and validating said bonds and there shall be no appeal by either party from said decree, or if on appeal the supreme court enters its decree confirming and validating said bonds or other written obligations, **the validity of said bonds or other written obligations so issued shall be forever conclusive against the county, municipality, or district issuing same; and the validity of said bonds or other written obligations shall never be called in question in any court in this state.**

Miss. Code Ann. § 31-13-7 (1990)(emphasis added).

¶28. This Court addressed the effect of validation proceedings *In re Validation of $7,800,000 Combined Utility System Revenue Bond, Gautier Utility District, Jackson County,* 465 So. 2d 1003, 1011-13 (Miss. 1985). There, this Court explained:

First, we have a bond validation proceeding instituted in accordance with Miss. Code Ann. § § 31-13-5 et seq. (1972). The purpose of such hearing is to consider all juridical questions of law or fact, or both, touching the legality and validity of the bonds. Legislative questions preceding the issuance of the bonds are beyond judicial review, either in the validation action or otherwise.

\*\*\*

The purpose of the hearing is to lay at rest all questions regarding the legality of the bonds. All matters which, if litigated with results adverse to the issuing district, could upset the bonds must as a matter of common prudence be resolved before the bonds are validated...

...A decree may not foreclose litigation of questions which as a matter of law were beyond the scope of the hearing. Therefore, the scope of the hearing must be sufficiently broad to consider all questions that need to be resolved before the bonds are sold...

\*\*\*

...Collectively, [our cases] hold that, subsequent to the bond validation decree becoming final, taxpayers may not be heard to complain of the legality or constitutionality of any facet of the bond issue or the project to be funded. Section 31-13-7 coupled with common law notions of res judicata and collateral estoppel preclude such "re-litigation".

Id.

¶29. In her Opinion and Judgment, Chancellor Springer found that:

All of the facts and circumstances alleged in McBride's complaint existed at the time of the Validation hearings and were therefore within the scope of the hearing. His due process rights have not been violated...

Every issue raised in Mr. McBride's complaint could have been raised at the validation proceedings held in 1993 and 1994 on the cops for the Downtown Park Plaza and the Multi-Modal Transportation Center, respectively. He is raising questions about things which were in existence at the time of the validation proceedings, and to allow Mr. McBride at this late date to litigate issues which have been finally adjudicated in the validation proceedings flies in the face of the reason for the legislation concerning bond issues: to finally put to rest any questions on the legality of the bonds and the projects which they fund so that governmental entities can get on with the business at hand. Our case law is clear that Mr. McBride is equitably estopped from raising these issues two and three years after the validation hearing and the entry of the judgments validating the Certificates of Participation...

No public projects could ever be funded through bonds and certificates of participation if those who buy those governmental obligations have to worry about challenges years after validation proceedings. The validation proceedings constitute res judicata on every issue raised in Mr. McBride's complaint, and therefore his complaint should be and is hereby dismissed pursuant to M.R.C.P. Rule 12(b)(1) (lack of subject matter jurisdiction due to res judicata); Rule 12(b)(6) (failure to state a claim upon which relief can be granted), and Judgment on the Pleadings is granted to the Defendants pursuant to Rule 12(c).

¶30. Based on our case law, as well as statutory law, the Chancellor's Opinion was well reasoned and correct. The time to contest the validation of the COPS was at the validation hearings, not now. McBride could have raised every issue in his Complaint at that time. This assignment of error is meritless, and this case is affirmed.

### I. THE CHANCELLOR ERRED IN HEARING THE MOTION FOR ATTORNEYS' FEES AFTER A JUDGMENT WAS RENDERED AND THE CASE WAS APPEALED TO THE MISSISSIPPI SUPREME COURT.

¶31. McBride argues, initially, that the City waived its request for sanctions because its request was filed more than ten days after the judgment. McBride contends that because the City did not request attorneys' fees at the hearing on its Motion to Dismiss, it waived the request, and the Chancellor erred in awarding attorneys' fees.

¶32. McBride's contention is without merit. The City's Motion for Sanctions was made in both its Motion to Dismiss and in its Answer and Defenses filed on August 23, 1996 and August 26, 1996, respectively. This assignment of error is meritless.

### II. THE CHANCELLOR ERRED IN ORDERING PLAINTIFF'S ATTORNEY TO PAY ATTORNEYS' FEES TO DEFENDANT UNDER THE LITIGATION ACCOUNTABILITY ACT OF 1988.

¶33. Miss. Code Ann. § 11-55-5 (Supp. 1998) provides, in pertinent part that:

Except as otherwise provided in this chapter, **in any civil action commenced** or appealed in any court of record in this state, **the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court,** upon the motion of any party or on its own motion, **finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification,** or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure...

Miss. Code Ann. § 11-55-5(1) (Supp. 1998)(emphasis added). Miss. Code Ann. § 11-55-3(a) (Supp. 1998) defines "without substantial justification" as:

when used with reference to any action, claim, defense or appeal, including without limitation any motion, means that it is frivolous, groundless in fact or in law, or vexatious, as determined by the court.

¶34. Recently, in ***Scruggs v. Saterfiel,*** 693 So. 2d 924, 927 (Miss. 1997), this Court reexamined Miss. Code Ann. § 11-55-3(a) (Supp. 1998):

To determine whether a claim is frivolous pursuant to the statute, this Court looks to the definition of "frivolous" found in M.R.C.P. 11. ***Leaf River Forest Products, Inc. v. Deakle,*** 661 So. 2d 188, 197 (Miss. 1995). For purposes of Rule 11, a claim is frivolous "only when, objectively speaking, the pleader or movant has no hope of success." ***Stevens v. Lake***, 615 So. 2d 1177, 1184 (Miss. 1993), quoting ***Tricon Metals & Services, Inc. v. Topp,*** 537 So. 2d 1331, 1335 (Miss. 1989); ***Smith v. Malouf,*** 597 So. 2d 1299, 1303 (Miss. 1992)(applying Rule 11 definition to Litigation

Accountability Act context). "Though a case may be weak or 'light-headed,' that is not sufficient to label it frivolous." *Deakle,* 661 So. 2d at 195; *Nichols v. Munn,* 565 So. 2d 1132, 1137 (Miss. 1990).

¶35. In her Opinion and Judgment, Chancellor Springer considered the factors to be considered before awarding attorneys' fees. Miss. Code Ann. § 11-55-7 (Supp. 1998). With respect to John R. Reeves, the Chancellor found that:

...Mr. Reeves should have known of the validation decrees and the case law and reviewed them to determine whether or not substantial justification existed to file a complaint such as this one...

Mr. Reeves testified and argued that there were various claims presented in the complaint and that there was a hope of success in the claims against the City of Meridian and MPIC. Ed Skipper, Director of Finance for the City of Meridian, testified that the City maintained files on the Park Project and Multi Modal Project which were available to the general public. Mr. Reeves had the opportunity to examine the public records of the City of Meridian and the Lauderdale County Chancery Court. Had he examined the records available in the Chancery Clerk's office, he would have learned of the validation proceedings prior to filing this suit. As discussed in this court's opinion and judgment of September 6, 1996, all of the facts complained about in the McBride complaint were in existence prior to the validation decrees, and the validation decrees precluded later challenges...

This court is also to consider the extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid. Upon arrival at the initial proceedings in this case, Mr. McBride asked for a continuance. The court granted a continuance so that all parties could review the voluminous documents filed in this matter. Neither Mr. McBride nor Mr. Reeves have made any effort to reduce the number of claims being asserted or to dismiss claims that this court has found not to be valid. In review of the claims asserted, Mr. Reeves and Mr. McBride should have known that the time for filing this suit had expired, but they continued to vigorously assert the claims...

As an attorney and legislator, Mr. Reeves is aware of Litigation Accountability Act of 1988 and is expected not file a lawsuit that is without substantial justification. He had every opportunity to research and insure that this claim had a hope of survival; he chose to file this suit and to pursue it even after he learned of the validation proceedings. Even if Mr. Reeves filed this suit with a hope of success, once he learned of the validation proceedings he should have voluntarily dismissed this suit...

According to the testimony of Bill Hammack, an attorney for the City, Mr. Reeves admitted that he did not know of the validation proceedings until after the suit was filed. Mr. Reeves took the witness stand himself in defense of this motion. While on the stand, he did not deny the testimony of Mr. Hammack...

Assuming Mr. Reeves did know about the validation judgments, a review of the case law should have dissuaded him from filing the lawsuit. If Mr. Reeves did not know about the validation judgments, he should have made the appropriate investigation and found out about them before filing the lawsuit. Once he did find out about them and reviewed the relevant case law, he should have dismissed his lawsuit. Either way, there is a deficiency in the justification for this lawsuit when Mr. Reeves' conduct is examined...

John Reeves may have been acting in good faith initially, but once he became aware of the validation decrees, the action should have been withdrawn...

¶36. The Chancellor carefully examined each statutory factor, and ultimately sanctioned Reeves in the amount of $9778.93. The Chancellor did all that she was required to do and found that Reeves was in violation of the Litigation Accountability Act. This Court will not say that she abused her discretion in finding so. This assignment of error is meritless.

## CONCLUSION

¶37. All issues raised by McBride are meritless. His case was properly dismissed by the Chancellor, and his attorney, John R. Reeves, was properly assessed with attorneys' fees.

¶38. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR. MILLS AND WALLER, JJ., NOT PARTICIPATING.**