# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00240-SCT

*JANE DOE*

*v.*

*ADAMS COUNTY DEPARTMENT OF CHILD*
*PROTECTION SERVICES, BY MARCUS D.*
*DAVENPORT, AND KAREN DOE, A MINOR, BY*
*AND THROUGH HIS NEXT FRIEND, MARCUS D.*
*DAVENPORT AND JOHN DOE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/03/2021 |
| TRIAL JUDGE: | HON. WALTER JEFFREY BROWN |
| TRIAL COURT ATTORNEYS: | EMILY CATHERINE "KATIE" BOONE |
| | BRIANA SHENAE KEELER |
| | CARMEN BROOKS DRAKE |
| | MICHAEL ZACHARY JEX |
| | SCOTT F. SLOVER |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY YOUTH COURT |
| ATTORNEY FOR APPELLANT: | SCOTT F. SLOVER |
| ATTORNEY FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: NATHAN H. McINTOSH |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 06/01/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.    Jane Doe[1] appeals the youth court's denial of her motion to transfer for lack of

jurisdiction and motion for recusal.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

---

[1] For privacy purposes, fictitious names are used for the natural mother, natural father, and minor child.

¶2.    In 2019, Jane was arrested in Natchez, Adams County, Mississippi, and charged with possession and sale of a controlled substance. At the time of her arrest, Jane was pregnant and homeless. As a condition of her bond with Adams County, Jane was placed at Born Free, a residential facility in Hinds County that provides substance abuse treatment to pregnant mothers. Jane entered Born Free on May 30, 2019. On July 16, 2019, Jane gave birth to Karen at the University of Mississippi Medical Center in Hinds County. Jane later returned to Born Free with Karen.

¶3.    On August 19, 2019, Jane was negatively discharged from Born Free for various program violations. The Adams County Sheriff's Department was contacted, and Jane was transported back to Adams County. The Adams County Department of Child Protection Services (CPS) was also contacted and took Karen into custody. Karen was placed in an approved foster home where she remained under the supervision and control of CPS.

¶4.    Upon her return to Adams County, Jane rented an apartment in Adams County. On December 10, 2019, the Adams County County Court, sitting as a youth court,[2] adjudicated Karen a neglected child. As part of the permanency plan of reunification, CPS developed a service agreement with Jane. Under the service agreement, Jane was to enter the Adams County family drug court program, find suitable employment, and maintain visitation with Karen.

¶5.    Jane failed to comply with the service agreement and further failed to maintain contact

_____

[2] Under Mississippi Code Section 43-21-107(1) (Rev. 2021), a "youth court division" was "created as a division of the county court of each county now or hereafter having a county court, and the county judge shall be the judge of the youth court unless another judge is named by the county judge as provided by this chapter."

with CPS. As a result, on December 10, 2020, the youth court found that it was in Karen's best interests for the permanency plan to change from reunification to adoption.

¶6. On October 4, 2021, CPS filed a petition to terminate parental rights. An amended petition was later filed on October 22, 2021.[3] A guardian ad litem was appointed, and a trial date was set for December 3, 2021.

¶7. On November 30, 2021, Jane filed a "motion to transfer for insufficient jurisdiction[4] or motion for recusal." In her motion, Jane asserted that "[she] was in a court-ordered rehab [facility] in Hinds County, Mississippi when [Karen] was born" and that "[a]t all times, [she] had physical presence with an intent to remain in Hinds County[.]" As a result, Jane argued that the case should be transferred from the Adams County Youth Court to the Hinds County Youth Court. Jane further argued that the youth court judge should recuse because he "has been the presiding [judge] in this action and has already concluded that termination [of parental rights] is proper."

¶8. Following a pretrial hearing on December 3, 2021, Jane's motions were denied. Jane was then proffered as a witness. She was examined by her attorney and cross-examined by both the youth court prosecutor and the guardian ad litem. After the proffered testimony, the youth court advised that its decision remained the same—Jane's motions to transfer and for recusal were denied.

¶9. After hearing all testimony at trial, the youth court found that termination of Jane's

---

[3] Karen's natural father, John Doe, voluntarily surrendered his parental rights.

[4] While Jane's motion asserts "insufficient jurisdiction," the motion does not address the youth court's jurisdiction, only venue.

3

parental rights was in Karen's best interests. A final judgment was entered terminating Jane and John's parental rights.

¶10.    Jane timely filed a notice of appeal. On appeal, Jane argues (1) venue was proper in Hinds County, and (2) recusal was necessary.

## DISCUSSION

### I.    Venue

¶11.    "An abuse of discretion standard of review is applied by this Court when reviewing the trial court's denial of a motion to change venue." *Herman Grant Co. v. Washington*, 214 So. 3d 266, 270 (Miss. 2017) (internal quotation marks omitted) (quoting *Merchant v. Forest Fam. Prac. Clinic, P.A.*, 67 So. 3d 747, 754 (Miss. 2011)). "A trial judge's ruling on such motion 'will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case.'" *Id.* (quoting *Park on Lakeland Drive, Inc. v. Spence*, 941 So. 2d 203, 206 (Miss. 2006)). "Questions of law, such as statutory interpretation, are subject to a *de novo* standard of review." *Jones v. Mallett*, 125 So. 3d 650, 652 (Miss. 2013) (internal quotation marks omitted) (quoting *Tellus Operating Grp., LLC v. Tex. Petroleum Inv. Co.*, 105 So. 3d 274, 278 (Miss. 2012)).

¶12.    "The youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child, a child in need of supervision, a neglected child, an abused child or a dependent child" except in limited circumstances that do not apply in this case. Miss. Code. Ann. § 43-21-151(1) (Rev. 2021). Venue for youth court proceedings is set

4

forth in Mississippi Code Section 43-21-155 (Rev. 2021), which provides:

> (1) If a child is alleged to be a delinquent child or a child in need of supervision, the proceedings shall be commenced in any county where any of the alleged acts are said to have occurred. After adjudication, the youth court may, in the best interest of the child, transfer the case at any stage of the proceeding for disposition to the county where the child resides or to a county where a youth court has previously acquired jurisdiction.

> (2) If a child is alleged to be an abused or neglected child, the proceedings shall be commenced in the county where the child's custodian resides or in the county where the child is present when the report is made to the intake unit. After adjudication the youth court may transfer the case at any stage of the proceeding for disposition to the county where the child resides or to a county where a youth court has previously acquired jurisdiction if that is in the best interest of the child.

Miss. Code. Ann. § 43-21-155 (Rev. 2021). The Mississippi Legislature has established different criteria for venue in cases involving a delinquent child as opposed to an abused or neglected child. *Id.* Because this case involves neglect, venue is proper "in the county where the child's custodian resides or in the county where the child [wa]s present when the report [wa]s made to the intake unit." Miss. Code Ann. § 43-21-155(2) (Rev. 2021).

### A.    County Where Karen's Custodian Resides

¶13.    "Custodian" means "any person having the present care or custody of a child whether such person be a parent or otherwise." Miss. Code. Ann. § 43-21-105(g) (Rev. 2021) (internal quotation marks omitted). Here, the record reflects, and the parties agree, that Karen's custodian is her natural mother, Jane. Thus, venue is proper where Jane resides. Miss. Code. Ann. § 43-21-155(2).

¶14.    This Court has not interpreted the term "resides" as used in Section 43-21-155(2). But "[a]s early as 1938, this Court has held that the word 'residence' as used in divorce statutes

5

is synonymous with 'domicile,' and that temporary absence by reasons of position did not change the residence of the party." *Dunn v. Dunn*, 577 So. 2d 378, 380 (Miss. 1991) (quoting *Bilbo v. Bilbo*, 180 Miss. 536, 549, 177 So. 772, 775 (1938)). "The elements indicating one's domicile include: '(1) an actual residence voluntarily established in said county, (2) with the bona fide intention of remaining there, if not permanently, at least indefinitely.'" *Williams v. Liberty Mut. Fire Ins. Co.*, 187 So. 3d 166, 170 (Miss. Ct. App. 2015) (quoting *Smith v. Smith*, 194 Miss. 431, 434, 12 So. 2d 428, 429 (1943)).

*1.    Actual Residence Voluntarily Established*

¶15.    Jane asserts she "did not reside in Adams County" and was "in a court-ordered rehab [facility] in Hinds County, Mississippi when [Karen] was born." As a result, she claims this matter should have been transferred to the Hinds County Youth Court. This Court disagrees.

¶16.    At the time of her arrest, Jane was in Adams County, homeless.[5] As a condition of her bond with Adams County, Jane was placed at Born Free in Hinds County. But Jane's placement at Born Free does not amount to the voluntary establishment of an actual residence in Hinds County. As part of Jane's criminal charges, the Adams County Sheriff's Department and the Adams County Youth Court agreed to allow Jane to attend the drug treatment program at Born Free due to the fact that she was seven months pregnant. As the Adams County youth court prosecutor noted, Jane's option was either Born Free in Hinds County or Adams County jail. Thus, Jane did not voluntarily establish a residence in Hinds County but, instead, chose a treatment facility over jail.

---

[5] Jane's parents reside in Adams County, but Jane no longer lives with them.

6

¶17. While Jane was at Born Free, Karen was born. On Karen's birth certificate, Jane listed Adams County as Jane's county of residence. When Jane was negatively discharged from Born Free, Adams County officials were notified, and Jane was picked up and brought back to Adams County. Jane has resided in Adams County since her discharge from Born Free in August 2019. After her criminal charges were resolved, Jane remained in Adams County. Jane entered the family drug court program in Adams County, and she rented an apartment in Adams County. Thus, at the time the youth court commenced the neglect proceedings, Jane was no longer in Hinds County and had voluntarily established an actual residence in Adams County.

### 2. Intent to Remain

¶18. "The intent necessary is the intent that an established residence shall be reasonably permanent." *Williams*, 187 So. 3d at 170 (internal quotation mark omitted) (citing *Smith*, 12 So. 2d at 429). "The intent must be to make a home at the moment and not in the future." *Id.* (internal quotation mark omitted) (citing *Smith*, 12 So. 2d at 429).

¶19. Jane argues she intended to move out of Adams County and to "start fresh" after her release from Born Free. Jane further argues that she intended to remain in Hinds County and that she looked for housing in Hinds County while at Born Free. In support, Jane relies on (1) a letter from Born Free that verifies her residency at Born Free in Jackson and (2) a Born Free recovery support plan statement that lists her long term goals as "move out of my home town and start fresh."

¶20. But the record reflects that Jane's placement at Born Free was temporary. Indeed, she

7

was temporarily housed at Born Free while attending the drug rehabilitation program. And her statement goals of moving out of Adams County and starting fresh were just that—goals. There is nothing in the record to indicate that Jane took any steps to permanently or indefinitely reside in Hinds County. As the record reflects, Jane did not rent an apartment or a house in Hinds County, she did not change her driver's license to Hinds County, and she did not secure employment in Hinds County. Regardless of her intent to remain in Hinds County, Jane did not move to Hinds County after her discharge from Born Free or after her Adams County criminal charges were resolved. Instead, Jane returned to and remained in Adams County where she participated in the Adams County family drug court program, rented an apartment, and eventually found a part-time job.[6]

¶21. In **Dunn**, Russell and Johnnie Dunn resided in Rankin County until Russell left the marital home. **Dunn**, 577 So. 2d at 379. Russell briefly lived in a motel in Hinds County and later moved into a friend's Hinds County home as a guest. **Id.** Johnnie filed a complaint for separate maintenance in Hinds County, and she served Russell at the Hinds County residence. **Id.** Russell responded and filed a motion for a change of venue, arguing that he was a resident domiciled in Rankin County. **Id.** The Hinds County chancellor denied Russell's motion for a change of venue, and Russell appealed. **Id.**

¶22. On appeal, this Court reversed and found, "[t]he mere fact that [Russell] was not actually present in his [Rankin County] home does not mean that [Rankin County] was not his residence." **Id.** at 380. The Court concluded:

---

[6] Jane testified at trial that she had been working part time for "[a]bout two weeks" doing taxidermy work.

> [T]he chancellor was manifestly wrong when he found that because [Russell] was temporarily residing in Hinds County, Mississippi, where he was found for the service of process, the Hinds County Chancery Court had jurisdiction and venue of this cause. The chancellor should have declined to hear this matter and transferred it to the Chancery Court of Rankin County.

*Id.*

¶23.    Here, as in ***Dunn***, the mere fact that Jane was temporarily residing at Born Free in Hinds County is insufficient to establish venue.  Such residence was temporary and a part of her bond agreement with Adams County.  When Jane was discharged from Born Free, she was transported back to Adams County.  Upon her return, Jane remained in Adams County where she rented an apartment, participated in drug court, and got a job.

¶24.    Even if this Court were to consider a broad interpretation of *resides*, Jane's argument would still fail.  In ***Aetna Casualty and Surety Co. v. Williams***, the Court considered whether a father was entitled to recover uninsured motorist benefits under his insurance policy for his nineteen-year-old son.  ***Aetna Cas. & Sur. Co. v. Williams***, 623 So. 2d 1005, 1006 (Miss. 1993).  Aetna argued that the minor child was not an insured as defined by the policy because he "was not a *resident* of his father's household[.]"  *Id.* at 1008.

¶25.    The Court noted that in defining who constitutes an insured under an uninsured motorist policy, the Legislature "chose the word 'residence' instead of the more restrictive term 'domicile.'"  *Id.* at 1009.  The Court concluded that a broad reading of the term *resident* was appropriate and "harmonize[d] with the legislative intent and purpose which gave rise to the Uninsured Motorist Act."  *Id.*  The Court explained that "[a] person can have but one domicile," but "a person may have multiple residences simultaneously."  *Id.* (citing ***In re Est.***

9

*of Burshiem*, 483 N.W.2d 175, 180 (N.D. 1992)). "Once established, a person's domicile remains intact absent a clear indication of intent to abandon the existing domicile and to establish another." *Id.* But "[r]esidence is an entirely different and more flexible concept" and "a dwelling place need not be fixed and permanent in order to qualify as a residence. Even a temporary and transient habitation can qualify." *Id.* at 1009-10.

¶26. The *Aetna* Court emphasized that "[w]hether a person 'resides' at a particular location is a practical question which turns on the degree of one's attachment to a particular place of abode." *Id.* at 1010. The Court affirmed the trial court's finding that the minor child "was sufficiently connected to his father's household to be considered a resident thereof." *Id.* The Court noted that the child's "attachment to his father's household was considerable," that the child had a room in his father's house, that he had clothing and personal possessions in the house, that he stayed at the house occasionally, and that he depended, in part, on his father to provide transportation and money. *Id.*

¶27. Here, as in *Aetna*, the Legislature included in the statutory language the more inclusive term *resides* as opposed to domiciled. Miss. Code Ann. § 43-21-155(2). But unlike in *Aetna*, Jane "was [not] sufficiently connected to [Born Free in Hinds County] to be considered a resident thereof." *Aetna*, 623 So. 2d at 1010. Although Jane had a room at Born Free, she was there only in connection with her Adams County criminal charges. Jane's participation in Born Free was contingent upon her cooperation with and her abiding by the program's rules. Due to her violation of those rules, Jane was at Born Free for less than three months. After she was negatively discharged, Jane returned to Adams County where she

10

remained. At the time the youth court commenced the neglect proceedings, Jane was no longer at Born Free in Hinds County and had not established any connection with Hinds County other than her brief participation at Born Free. Thus, unlike in *Aetna*, Jane's "attachment to [Born Free in Hinds County] was [not] considerable" to establish residency for purposes of venue. *Aetna*, 623 So. 2d at 1010.

¶28. Upon review, this Court finds that Karen's custodian, Jane, resides in Adams County. Miss. Code. Ann. § 43-21-155(2).

> **B.** **County Where Karen was Present When the Report was Made to the Intake Unit**

¶29. Jane fails to address this subsection. While Jane summarily concludes that "the child was not present in Adams County when the report was made," she offers no support for such statement. Instead, Jane simply argues that "[a] child born in Hinds County, whose mother resided in Hinds County, should have venue in the Hinds County Youth Court."

¶30. "An appellant has an affirmative duty to provide support for h[er] assignments of error." *Powell v. Powell*, 644 So. 2d 269, 278 (Miss. 1994) (citing *Roberson v. State*, 595 So. 2d 1310, 1318 (Miss. 1992)). "This Court feels no compunction to address an assignment of error in the absence of such support." *Id.* (citing *Caruso v. Picayune Pizza Hut, Inc.*, 598 So. 2d 770, 776 (Miss. 1992)).

¶31. Nevertheless, the record reflects that when Jane was negatively discharged from Born Free, CPS was contacted, and Karen was placed in the custody of CPS.[7] An initial intake

---

[7] Karen was placed in the custody of CPS on August 19, 2019, the same day Jane was discharged from Born Free.

11

order was prepared as a result of Jane's discharge from Born Free. Thus, it appears Karen was in the custody of CPS when the intake report was made due to Jane's discharge from Born Free.

¶32. Because Jane resides in Adams County and Karen was present in Adams County when the intake report was made, venue is proper in Adams County. Miss. Code Ann. § 43-21-155(2). Accordingly, the chancellor did not err by denying Jane's motion to transfer.

*II.     Recusal*

¶33. "The Court reviews the denial of a motion to recuse for manifest abuse of discretion." *Batiste v. State*, 337 So. 3d 1013, 1020 (Miss. 2022) (citing *Hathcock v. S. Farm Bureau Cas. Ins. Co.*, 912 So. 2d 844, 849 (Miss. 2005)). "A presumption of impartiality exists that a judge, sworn to administer impartial justice, is qualified and unbiased." *Payton v. State*, 897 So. 2d 921, 943 (Miss. 2003) (citing *McBride v. Meridian Pub. Improvement Corp.*, 730 So. 2d 548, 551 (Miss. 1998)). "This Court presumes that a trial judge is qualified and unbiased, and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption." *Id.* (citing *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997)). When asked to review the denial of a motion for recusal, this Court

> "will look to the whole trial and pass upon questions on appeal in the light of the completed trial. Every act and movement had during the entire trial will be considered, and if we are unable to find that rulings have been prejudicial to the defendant, we will not reverse."

*Id.* (quoting *Brown v. State*, 829 So. 2d 93, 99 (Miss. 2002)).

¶34. The record reflects that Karen was adjudicated a neglected child and placed in foster

care. A reunification plan was implemented in an effort to reunite Karen with Jane, but those efforts were unsuccessful. Rodneicia Williams, a child and family protection specialist with CPS, testified that Jane failed to complete all goals outlined in the reunification service agreement, i.e., she failed to complete family drug court, she failed to find suitable employment, and she failed to comply with visitation. As a result, Williams recommended that reunification with Jane was no longer in Karen's best interests.

¶35. On December 10, 2020, the youth court found that CPS had made reasonable efforts to reunite Karen with Jane, that those efforts were unsuccessful, that reunification was not in Karen's best interests, and that adoption was the best permanency plan for Karen. CPS filed a petition to terminate Jane's parental rights on October 4, 2021.

¶36. On November 30, 2021, more than one month after CPS moved to terminate her parental rights and almost one year after the youth court found adoption was the best plan, Jane filed a motion for recusal. Jane argued that the youth court judge should recuse from the termination of parental rights hearing because he "ha[d] been the presiding [judge] in this action and ha[d] already concluded that termination [of Jane's parental rights] was proper."

¶37. The youth court judge denied the motion for recusal. He explained:

> This court has been working a plan of reunification for almost two years . . . . As to the motion for this court to recuse myself, I've wondered from time to time, I can see where [Jane]'s notion is one where you have been dealing with the same judge for some period of time on the permanency hearings on that nature, and it may feel like in some way this court is bias[ed] in some way against you. The fact of the matter is, if this court was bias[ed] we would have done this a year ago. We have been working with [Jane] for many years. The plan of reunification has been that way for some time until later. . . . [T]he court has been more than fair throughout this time and the court is not going to recuse myself.

13

¶38. Jane argues the youth court judge erred by denying the motion for recusal. She asserts, "[t]he appearance of impropriety requires recusal so as to avoid the same judge hearing a matter the judge has already previously determined." This Court disagrees.

¶39. The Mississippi Legislature has expressly granted statutory authority to county court judges to preside over abuse and neglect proceedings and termination of parental rights proceedings concomitantly. Indeed, Mississippi Code Section 93-15-105(1) (Rev. 2021) provides:

> The chancery court has original exclusive jurisdiction over all termination of parental rights proceedings *except when a county court sitting as a youth court has acquired jurisdiction of a child in an abuse or neglect proceeding, then the county court shall have original exclusive jurisdiction to hear a petition for termination of parental rights against a parent of that child* pursuant to the procedures of this chapter.

Miss. Code Ann. § 93-15-105(1) (Rev. 2021) (emphasis added).

¶40. As previously discussed, the Adams County County Court, sitting as a youth court, acquired jurisdiction of Karen in the neglect proceeding. Accordingly, under Section 93-15-105(1), the youth court had the authority to hear and rule on the petition to terminate Jane's parental rights. *Id.*

¶41. Jane claims that the youth court judge's comments during the pretrial hearing amounted to accusations of fact, and she asserts, "an accuser should not be the trier of fact." But the record reflects that the youth court judge's comments at the pretrial hearing were made in response to Jane's motion to transfer and were not accusations of fact. Specifically, the youth court stated:

> This all happened because [Jane] was arrested and was pregnant. She

14

was using drugs and selling drugs.

> The narcotic agency and the sheriff['s] department along with the youth court decided it would be best if this child be born in a place where [Jane] could no longer abuse her fetus by using methamphetamines and other drugs. They made the arrangements to send her to Jackson. CPS was notified about it. When this case came, as I recall, she was discharged negatively at Born Free, and they called Adams County. They didn't call Hinds County as far as I know or if they worked hand-in-hand and the case came back here. I can't imagine if they brought this case in Hinds County she would be complaining "Hey, I live in Adams County." The problem is, I agree with [the youth court prosecutor].

> We have had this for two years and this is the first time I've heard anything about that this court is the wrong venue. I was looking at and let me say this. This court has been working a plan of reunification for almost two years as well. This is on TPR. This is 93-15-105 jurisdiction and venue.

> . . . .

> This child is two years old now. This case was brought over two years ago. At no time has this issue ever been raised. [Jane] has never made any indication or there may be some notes in there about being advised to move to Hinds County. I don't see where that Hinds County was ever, it just happened to be where this child was born.

> I believe the time has passed to be objective to venue or jurisdiction. The appeal time has passed. This court has entered an adjudication many many months ago or years at least two. Maybe not two, yet, but getting close to two.

> THE COURT IS GOING TO FIND: That the proper jurisdiction for this case is in fact Adams County.

¶42.    "Canon 3 of the Mississippi Code of Judicial Conduct governs recusal." ***Batiste***, 337 So. 3d at 1021.  Canon 3E(1)(a) requires a judge to disqualify himself when "the judge has . . . personal knowledge of disputed evidentiary facts concerning the proceeding[.]"  Miss. Code of Jud. Conduct Canon 3E(1)(a).  But recusal is required "only when a judge ha[s] personal knowledge of *disputed evidentiary* facts related to a case, not personal knowledge

15

of all case-related facts." *Patton v. State*, 109 So. 3d 66, 77-78 (Miss. 2012).

¶43.    Here, the youth court judge's comments were simply his recollection of the facts and circumstances regarding venue.  The comments pertained to the judge's knowledge of case-related facts and did not involve the judge's personal knowledge of disputed evidentiary facts related to the case.  *Id.*  As such, recusal was not required.  *Id.*

¶44.    In support of her argument, Jane relies on *Collins v. Dixie Transport, Inc.*, 543 So. 2d 160 (Miss. 1989).  But Jane's reliance of *Collins* is misplaced.

¶45.    *Collins* involved "an order enforcing against the plaintiff an oral settlement agreement allegedly reached regarding an automobile accident personal injury claim." *Id.* at 161.  The "outcome determinative issue" was "whether plaintiff verbally authorized his attorney to accept a settlement offer." *Id.*  The Court found that "the trial judge [had] assumed the role of a fact witness" and should have recused. *Id.*  The Court explained:

> In today's case, Curtis Lee Collins testified that the trial judge was in the room during the critical settlement conference. Chris Collins, the plaintiff's son, testified he had a conversation with the trial judge in the court's hallway on how to fire an attorney, a material fact in dispute at the hearing over which the trial judge then presided. Chris testified as well that the judge told him $125,000.00 was a good offer and that he should take it.
>
> In this setting, the trial judge felt compelled to testify throughout the hearing. He repeatedly prefaced his remarks by saying that he was not testifying, and then testified. He went so far as to request the court clerk to swear him in so he could be questioned, but the attorneys balked at that.
>
> On the record before us, the trial judge was both a witness to and adjudicator of fact issues with respect to which he was obliged to have played but one role. As those matters went to what was central—the credibility of Curtis Lee Collins and his sons, we may but reverse the order enforcing settlement. We remand the case to the Circuit Court for a new hearing on the question of whether an enforceable settlement agreement has been reached, whereupon the

trial judge shall recuse himself from further participation in this case in the role of judge.

*Id.* at 167 (footnote omitted).

¶46. Here, unlike in *Collins*, the youth court judge did not participate in the hearing as a witness. Instead, as discussed, the youth court judge's statements were in response to Jane's motion to transfer and did not involve his personal knowledge of disputed evidentiary facts related to the case.

## CONCLUSION

¶47. Jane's motions to transfer and for recusal of the trial judge were properly denied. Thus, the youth court's judgment is affirmed.[8]

¶48. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

---

[8] Jane did not appeal the youth court's termination of her parental rights. As a result, this Court's affirmance of the youth court's judgment does not include the issue of termination of parental rights; it concerns only venue and recusal.